ANDREWS *v.* CITIZENS STATE BANK OF DECATUR.

BILLS AND NOTES—BANKS AND BANKING.

> Produce buyers, who requested bank to honor vouchers issued in vicinity by their buying agent, and who honored drafts drawn by said agent and paid by the bank, may not later repudiate them and recover from bank on ground that they were not issued for produce and were cashed contrary to instructions.

Error to Van Buren; White (Charles E.), J. Submitted June 6, 1930. (Docket No. 59, Calendar No. 34,945.) Decided October 3, 1930.

Assumpsit by Sam and Abe Andrews, copartners, as Andrews Brothers, against the Citizens State Bank of Decatur, Michigan, a Michigan banking corporation, to recover for money paid on produce vouchers. From a directed verdict and judgment for defendant, plaintiffs bring error. Affirmed.

*David I. Hubar* (*Milton M. Maddin,* of counsel), for plaintiffs.

*R. H. Cavanaugh* and *David Anderson,* for defendant.

POTTER, J. Plaintiffs, produce dealers in Detroit, are engaged in buying farm produce in various places in the State of Michigan, and were, at the time the cause of action herein is alleged to have accrued, engaged in purchasing farm produce in the vicinity of Decatur, Michigan. They there em-

ployed one Brandt as their buying agent. March 7, 1927, plaintiffs wrote the defendant bank a letter as follows:

"March 7, 1927.

"CITIZENS STATE BANK,
   "Decatur, Michigan.
"*Gentlemen:*
   "We have appointed Mr. Robert L. Brandt of your city as our produce buying representative in that territory, and while all the vouchers he issues for produce may not come through your bank as he will load produce at other points like Waverly, Marcellus, and perhaps Dowagiac, if he continues with us he will no doubt do a large volume of business right there in Decatur.

   "We are operating throughout Michigan buying direct from the growers and have buying stations now at about 130 to 140 different points in Michigan, and our method of payment for this produce is to issue a voucher signed by the buyer for the produce which the grower takes to the local bank and gets his cash, and the vouchers are forwarded here to Detroit for clearance through the clearing house or direct to the Peoples State Bank for payment.

   "We trust you will be able to handle these potatoes the same as the other banks around the State, and if you want any information relative to the responsibility and reputation of Andrews Brothers, we would suggest that you take it up with the Peoples State Bank of Detroit. We could also refer you to a few banks in Southern Michigan, Bronson, Coldwater, The First National Bank of Burr Oak, and to any of the banks in the Northern Indiana onion country, where we operate very extensively.

   "If there is any other information you desire, we would appreciate you taking it up with us.

   "Thanking you for any courtesies you might extend us and trusting the growers of that vicinity

will appreciate our coming into that territory, we are,

"Very truly yours,

"M:MAC          Andrews Brothers."

Brandt issued some sight drafts which were cashed by the defendant bank, forwarded in the regular course of business to the city of Detroit and presented to the Peoples Wayne County Bank, in which plaintiffs carried their account, paid by that bank, charged to the plaintiffs' account, and plaintiffs advanced the necessary money to the bank to pay for the same, and they were paid for and accepted by plaintiffs. Plaintiffs claim these sight drafts were not issued for produce; that the consideration therefor failed, and instituted suit against defendant declaring on the common counts of assumpsit claiming damages in the sum of $1,627.75. In the bill of particulars they list the vouchers which they claim were paid by defendant and which were forwarded to Detroit and paid by the Peoples Wayne County Bank at Detroit and charged to their account and accepted and subsequently paid by them and delivered by the Peoples Wayne County Bank at Detroit to plaintiffs. At the conclusion of the plaintiffs' testimony both parties moved for a directed verdict. The court directed a verdict of no cause of action, and plaintiffs bring error.

There is no claim the sight drafts drawn by Brandt were forgeries. The trial court said:

"So far as the evidence of the case discloses, the only evidence that the defendant bank had, as to the purpose for which Brandt drew the drafts, was such evidence as appeared upon the face of the drafts themselves. This evidence was as available to the plaintiffs as to the defendant. If these drafts showed on their face they had been drawn by

Brandt, and cashed by the defendant bank, contrary to the so-called letter of instructions, plaintiffs should not have honored the drafts from time to time as they were presented. Having voluntarily paid said drafts * * * they cannot now complain, or seek to claim that defendant bank cashed the drafts contrary to instructions.''

We think the conclusion of the trial court was correct. In *Robinson* v. *Reynolds,* 2 Q. B. 196, the position of the parties was substantially as if defendant here were suing plaintiffs, after acceptance and before payment of the drafts. It is said:

''The sole ground on which the defendant relies is that the acceptance was not binding on account of the total failure or insufficiency of the consideration for which it was given, the document, on the delivery of which the acceptance was given, having been forged, and there never having been any other consideration whatsoever for the acceptance of the defendants. And this would have been a good answer to the action, if the bank had been the drawers of the bill. But the bank are indorsees, and indorsees for value: and the failure or want of consideration between them and the acceptors constitutes no defence; nor would the want of consideration *between the drawer and acceptors* (which must be considered as included in the general averment that there was no consideration), unless they took the bill with notice of the want of consideration, which is not averred in this plea. Admitting that the bill was accepted by the drawee at the request of the bank, and on a consideration which turns out to be utterly worthless, the case is the same as if the bill had been accepted without any value at all being given by the bank to the defendants; and, on that supposition, the defendants would still be liable as acceptors to the bank, who are indorsees for value, unless, not only such want of consideration existed between the

drawer and acceptors, but unless the indorsees had notice or knowledge thereof. For the acceptance binds the defendants conclusively, as between them and every *bona fide* indorsee for value. And it matters not whether the bill was accepted before or after such an indorsement. Consistently with every averment in the plea, the bill may have been accepted on the *credit of the drawer;* or for his accommodation; and the plaintiff would then unquestionably have a right to sue, having given full value for it."

We think this case is conclusive upon the proposition that plaintiffs, having accepted the drafts, when they were presented to the Peoples Wayne County Bank at Detroit, and paid the same, are bound thereby, and they cannot now go back of their own acceptance and payment of these drafts and maintain an action against defendant.

In *First National Bank of Detroit* v. *Burkham,* 32 Mich. 328, it is said:

"It is not claimed in this case that if the drawees had relied upon the responsibility of the drawer, and that had failed them, they would have had any ground of recovery against the payees. But we think it would be an exceedingly unsafe doctrine in commercial law, that one who has discounted a bill in good faith, and received in its payment the strongest possible assurance that it was drawn with proper authority, should afterwards hold the moneys subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment. The beauty and value of the rules governing commercial paper consist in their perfect certainty and reliability; they would be worse than useless if the ultimate responsibility for such paper, as between payee and drawee, both acting in good faith, could be made to depend on the motives which influenced the latter to honor the paper.

"The best view that can be taken of this case for the plaintiffs below is, that there was a mutual mistake of fact under which the bank discounted and the drawees paid the bill. Conceding this, why should the drawees be allowed to transfer the loss to the bank? Usually when one of two parties equally innocent must suffer, the law leaves the loss where it has chanced to fall; but in a case like this, if the law should assist either party on the ground of mutual mistake, it certainly should not be the drawees. This suit seeks to reverse the rule of commercial law, and transfer from the acceptor to the payee the responsibility which the former assumes by acceptance, and which the law leaves there."

This case relies upon *Robinson* v. *Reynolds,* 2 Q. B., 196, and *Thiedemann* v. *Goldschmidt,* 1 De Gex, Fisher & Jones, 4, which the court said appeared to be unanswerable.

Judgment affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.